## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GNP MAINE HOLDINGS, LLC, d/b/a | ) | Chapter 7 |
| GREAT NORTHERN PAPER COMPANY, | ) | Case No. 14-10791 LHK |
| | ) | (Jointly Administered) |
| Debtor, | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| GNP EAST, INC., | ) | Chapter 7 |
| | ) | Case No. 14-10821 LHK |
| Debtor. | ) | |

**ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR AUTHORITY TO SELL ASSETS OF DEBTORS' ESTATES FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS**

Upon the Motion filed in these jointly-administered Chapter 7 cases by P.J. Perrino, Jr., Esq., Chapter 7 Trustee (the "Trustee") of the estate of Debtor, GNP Maine Holdings, LLC, d/b/a Great Northern Paper Company ("GNP Holdings") and the estate of Debtor, GNP East, Inc. ("GNP East") (together, "Debtors"), requesting entry of an Order for Authority to Sell Assets of Debtors' Estates Free and Clear of Liens, Claims, and Interests (the "Sale Motion") [Docket No. 153], which sale hearing was held before the Court on December 2, 2014 (the "Sale Hearing"), and based upon the Order [Docket No. 182] approving the Bid Procedures Motion [Docket No. 151] (the "Bidding Procedures Order"), and based upon the Orders [Docket Nos. 183 and 203] approving the Financing Motion [Docket No. 161]; and due notice of the Sale Motion and relief sought therein and of the Sale Hearing having been given to all parties entitled thereto under the Bidding Procedures Order, as evidenced by the Certificates of Service filed with the Bankruptcy Court; and upon consideration of any objections to the Trustee's Sale Motion, any such objections being overruled for the reasons set forth on the record at the Sale Hearing, and based on the pleadings and arguments of counsel, and good and sufficient cause appearing therefor;

{P0818674.1}

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.  The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant Federal Rule of Civil Procedure 52, made applicable to this proceeding pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.  The Bankruptcy Court has jurisdiction and authority to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N).  Venue of this case in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory and other predicates for the relief sought herein are §§ 105 and 363 of the United States Bankruptcy Code (the "Code"), Federal Rules of Bankruptcy Procedure 2002, 6004, 9013, and 9014, and D. Me. LBR 2002-1, 6004-1, 9013-1, and 9014-1.

C.  The Trustee has followed the procedures for giving notice of the Sale Motion and the Sale Hearing, as set forth in the Bidding Procedures Order.  Proper, timely, and adequate notice of the Sale Motion and the Sale Hearing has been provided in accordance with § 102(1) of the Code and Federal Rules of Bankruptcy Procedure 2002, 6004, and 9014 and the Bidding Procedures Order, and no other or further notice of the Sale Motion, the Sale Hearing or the entry of this Sale Order is required.

D.  A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities as outlined in the Bidding Procedures Order and other filings relating to the sale transaction, and any objections or responses to the Sale Motion being resolved as set forth on the record at the Sale Hearing.

E.  The Trustee has demonstrated a sufficient basis and the existence of exigent circumstances requiring him to sell on behalf of the estates the Purchased Assets under § 363 of the Code, and such actions are appropriate exercises of the Trustee's business judgment. Approval of the Sale Motion and the Asset Purchase Agreement dated as of November 12, 2014 as may be modified (the "Agreement") entered into by and between the Trustee, on behalf of the estates, and Hackman Capital Acquisition Company, LLC or its designee ("Hackman Capital"), and the consummation of the transactions contemplated thereby are in the best interests of Debtors' estates.

F.  The Trustee has adequately and appropriately marketed the Purchased Assets through, upon request and *inter alia*, the dissemination of information relating to the Purchased Assets to potential purchasers, the opportunity of any interested party to conduct due diligence, by negotiations with parties other than Hackman Capital and by the notice of the Sale Hearing.

G.  No consents or approvals other than those provided for in the Agreement and the Sale Motion are required for the Trustee to consummate the transactions described in the Agreement.

H.  The Trustee has full power and authority to execute the Agreement on behalf of the estates and all other documents contemplated thereby, and the sale of the Purchased Assets by the Trustee has been duly and validly authorized by the Trustee.

I.  Approval of the Agreement and consummation of the sale transactions at issue in the Agreement and the Sale Motion at this time are in the best interests of Debtors' estates and their creditors and other parties-in-interest.

J.  The Trustee has demonstrated good and sufficient business justification for the sale of the Purchased Assets pursuant to § 363(b) of the Code in that, among other things, a sale

of the Purchased Assets at this time to Hackman Capital in accordance with the Agreement will result in the highest possible sale price.

K. Hackman Capital is hereby found to be acting in good faith within the meaning of § 363(m) of the Code in closing the transactions contemplated by the Agreement. The transfer of the Purchased Assets pursuant to the Agreement (i) are or will be legal, valid and effective transfers of property of Debtors' estates to Hackman Capital; and (ii) vests or will vest Hackman Capital with all right, title, and interest of Debtors' and Debtors' estates in and to the Purchased Assets free and clear of all liens, claims, interests, mortgages, and encumbrances pursuant to § 363(f) of the Code, and, unless otherwise provided for in this Sale Order and the Agreement, with all valid liens, claims, mortgages and encumbrances on the Purchased Assets to attach to the Total Purchase Price. The Bankruptcy Court has jurisdiction to authorize and approve the transfer of all of the Purchased Assets pursuant to the terms of this Sale Order and the Agreement.

L. The terms and conditions of the Agreement are fair and reasonable. The Agreement represents the highest and best offer for the Purchased Assets. The Total Purchase Price is fair and reasonable and constitutes reasonably equivalent value for the Purchased Assets under the Code and applicable law.

M. The Agreement was proposed, negotiated, and entered into by the Parties without collusion, in good faith, and from arm's length bargaining positions. Neither the Trustee on the one hand, nor Hackman Capital on the other, have engaged in any conduct that would cause or permit the Agreement to be avoided under § 363(n) of the Code.

N. The sale must be approved and consummated promptly in order to maximize the value to Debtors' estates.

O.  Hackman Capital would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the estates and their creditors, if the sale of the Purchased Assets to Hackman Capital were not free and clear of all interests, liens, claims and encumbrances of any kind or nature whatsoever, or if Hackman Capital would, or in the future could, be liable for any of the interests.

P.  The Trustee may sell the Purchased Assets free and clear of all interests, liens, claims and encumbrances of any kind or nature because one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. Those non-debtor parties with interests in Debtors' Purchased Assets who did not object to the sale or the Sale Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).

Q.  The transfers contemplated by the Agreement do not and shall not subject Hackman Capital to any liability for claims against Debtors by reason of such transfers under the laws of the United States, any state, territory or possession thereof.

R.  The sale of the Purchased Assets is exempt from any taxes, including, without limitation, any sales, recording, or other transfer taxes or fees otherwise applicable, pursuant to the provisions of the Code.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.  The Sale Motion is GRANTED, as further described herein. Capitalized terms used in this Sale Order and not defined shall have the meanings set forth in the Sale Motion and the Agreement, as applicable.

2.  All objections to the Sale Motion have either been resolved or are overruled.

## Approval of the Agreement

3. The Agreement and all of the terms and conditions thereof are hereby approved.

4. The sale to Hackman Capital is approved pursuant to §§ 105 and 363 of the Code, and the parties are directed and authorized to immediately take such actions as are necessary to consummate and implement the Agreement. The terms and conditions of the Agreement are hereby approved in all respects.

5. Pursuant to § 363(b) of the Code, the Trustee is hereby authorized and empowered to fully perform under, consummate, and implement the Agreement, together with such additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may reasonably be requested by Hackman Capital for the purpose of assigning, transferring, granting, conveying and conferring to it, or reducing to Hackman Capital's possession the Purchased Assets, as appropriate, or as may be necessary or appropriate to the performance of the obligations contemplated by the Agreement.

## Transfer of Assets

6. Pursuant to § 363(f) of the Code, the Purchased Assets shall be transferred to Hackman Capital and, upon the closing under the Agreement, shall be free and clear of all liens, claims, encumbrances and interests, whether arising prior to or subsequent to the commencement of Debtors' Chapter 7 cases, and whether imposed by agreement, understanding, law, statute, equity or otherwise, and with all such liens, claims, encumbrances and interests, if any and in whatever amount (if any), to attach to the Total Purchase Price in the order of their priority with the same validity, force and effect that they now have as against the Purchased Assets.

7. All persons or entities holding liens, claims, encumbrances or interests of any kind and nature with respect to the Purchased Assets are hereby barred from asserting such liens, claims, encumbrances or interests of any kind and nature against Hackman Capital, its successors or assigns, or against the Purchased Assets.

8. The transfer of the Purchased Assets to Hackman Capital pursuant to the Agreement shall constitute legal, valid, and effective transfers of the Purchased Assets as appropriate, and shall vest Hackman Capital with all right, title, and interest of Debtors and their estates in and to the Purchased Assets free and clear of all interests, liens, claims and encumbrances of any kind or nature whatsoever.

### Additional Provisions

9. Hackman Capital shall have no liability or responsibility for any liabilities or other obligations of Debtors arising under or related to such Purchased Assets. Without limiting the generality of the foregoing, Hackman Capital shall not be liable for: (i) any fixed, unliquidated or contingent claims against Debtors or any of its predecessors or affiliates, whether based upon successor or vicarious liability or otherwise, and whether any of such items are known or unknown as of the Closing Date; (ii) any violation or alleged violation of any Environmental Laws; or (iii) liabilities under any pension, ERISA, tax, employment, labor, employment or antidiscrimination laws or regulations, any products liability law, or any other liability related to Debtors.

10. On and after the Closing Date, each of Debtors' creditors asserting a lien in any of the Purchased Assets is authorized and directed to execute such documents and take all other actions as may be necessary to release its liens on or against the Purchased Assets being transferred pursuant to the Agreement, as such liens may have been recorded or otherwise exist;

provided that the failure of any such creditors to comply with the provisions of this paragraph shall in no way limit the release, discharge and termination of any such lien against the Purchased Assets as otherwise provided by this Sale Order.

11. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing liens and other interests of record against or in the Purchased Assets shall not have delivered to Hackman Capital prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all liens and other interests that the person has with respect to the Purchased Assets, then, subject to the occurrence of the Closing, (a) the Parties are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets; and (b) the Parties are hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens and other interests against or in the Purchased Assets.

12. The automatic stay provisions of § 362 of the Code are vacated and modified to the extent necessary to implement the terms and provisions of the Agreement and the provisions of this Sale Order.

13. As to the Agreement and Purchased Assets transferred thereby, this Sale Order (a) is and shall be effective as a determination that, on the Closing Date and the payment of the Total Purchase Price required to be paid on the Closing Date, all liens existing as to the Purchased Assets prior to the Closing Date have been unconditionally released, discharged; and (b) is and shall be binding upon and govern the acts of all persons or entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages,

recorders of deeds, taxing authorities, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, governmental entities, secretaries of state, federal, state, and local officials, and all other persons or entities who may be required by operation of law or contract, to accept, file, register or otherwise record or release any documents or instruments.

14. All persons or entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to Hackman Capital on the Closing Date.

15. The Bankruptcy Court retains jurisdiction to (i) enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith; (ii) compel delivery of the Purchased Assets to Hackman Capital; (iii) compel delivery of the Total Purchase Price; (iv) compel specific performance of the parties' obligations; (v) resolve any disputes arising under or related to the Agreement; (vi) interpret, implement and enforce the provisions of this Sale Order; and (vii) determine any disputes relating to or concerning the receipt, use, application or retention of the proceeds from the sale of the Purchased Assets.

16. To the extent that any provision of this Sale Order is inconsistent with the provisions of the Agreement, the terms of this Sale Order control.

17. Hackman Capital is deemed a buyer in good faith of the Purchased Assets and thus entitled to all of the protections afforded by § 363(m) of the Code.

18. The terms and provisions of the Agreement, together with the terms and provisions of this Sale Order, shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, Debtors' estates, and Debtors' creditors, Hackman Capital and its affiliates,

successors and assigns, and any affected third parties and persons or entities asserting a claim against or interest in or lien on Debtors' estates or any of the Purchased Assets.

19. The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Bankruptcy Court, provided that any such modification, amendment or supplement is not material.

20. The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the efficacy of such provision.

21. The parties are hereby authorized and directed to take all actions reasonable and necessary to effectuate the terms of the Agreement and the transactions contemplated thereunder and the provisions of this Sale Order, all without the necessity of any further order of the Bankruptcy Court.

22. The gross sale proceeds from the Total Purchase Price shall be allocated as follows: 15% to the GNP East estate and 85% to the GNP Holdings estate.

23. In the event that Hackman Capital exercises the Option to purchase the Real Estate at or after the Closing Date, no separate order from this Court is necessary and the Real Estate shall be sold, transfered, and conveyed to Hackman Capital free and clear of any liens, claims, and interests pursuant to 11 U.S.C. § 363(f) and the other provisions set forth in this Sale Order relating to the sale of the Purchased Assets.

24. Nothing in this Sale Order or the Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability (including but not limited to for reclamation) to a governmental unit that any entity would be subject to as the owner or operator of the Purchased Assets or any Real Estate purchased under the option to purchase the Real

Estate pursuant to the Agreement after the date of entry of this Sale Order. Nothing in this Sale Order or the Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under police or regulatory law. Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under environmental law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

25. The provisions of Federal Rule of Bankruptcy Procedure 6004(h) shall not apply to stay consummation of the sale of the Purchased Assets to Hackman Capital under the Agreement, as contemplated in the Sale Motion and approved by this Sale Order, and the parties are hereby authorized to consummate the transactions contemplated and approved herein immediately upon entry of this Sale Order.

26. The Purchased Assets are sold subject to the rights and easements of record of Great Lakes Hydro America, LLC ("GLHA") located on the GNP East premises. This Court retains jurisdiction to resolve any disputes regarding GLHA's continuing rights, and the automatic stay provisions of § 362 of the Code are vacated and modified to the extent necessary for GLHA to address any issues arising from such interference with respect to any such rights and easements before any Court or administrative body having jurisdiction.

27. Within 3 business days of the Closing, the Trustee shall distribute the Total Purchase Price in accordance with the Global Settlement Term Sheet approved by the Court by Order entered on November 21, 2014.

28. The Trustee, the Town, and the State of Maine, Department of Economic and Community Development (the "State") have reached an agreement to ensure the continued access to and use of the Waste Water Treatment Assets, which terms are reflected on the draft Term Sheet attached hereto as Exhibit A (the "Term Sheet"). The Trustee, the Town and State shall enter into agreements, as necessary, reflecting substaintially similar terms outlined in the Term Sheet and the Trustee shall seek Bankruptcy Court approval, as necessary, to effectuate the agreement set forth in the Term Sheet.

Dated: _____.

_____
Louis H. Kornreich, Chief Judge
United States Bankruptcy Court